UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAMES OLDHAM,                          )
                                       )
               Petitioner,             )
                                       )
        v.                             )          No. 1:23-cv-00810-JMS-TAB
                                       )
GALIPEAU,                              )
                                       )
               Respondent.             )

**Order Denying Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

The petition of James Oldham for a writ of habeas corpus challenges a prison disciplinary

proceeding identified as No. WCC 22-03-0096. For the reasons explained in this Order,

Mr. Oldham's habeas petition must be **denied**.

**A.      Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning

class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,*

485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018).

The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written

notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial

decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,*

418 U.S. 539, 563-67 (1974).

**B.      The Disciplinary Proceeding**

On March 4, 2022, Captain Joseph Farley wrote a conduct report against Mr. Oldham for

possessing a cellular device, stating:

> On 3/4/22 at approximately 1904, I noticed Offender Oldham, James #135678
> sitting between the bed area 3-S1-7 and 8 attempting to conceal something in his
> hands. I had offender Oldham stand up so I could search him. Once he stood up, I
> noticed a blue cellphone in his right hand, as he attempted to hide it under a t-shirt
> on bed 3-S1-7U. I took the phone from his hand without incident.

Dkt. 9-1. The phone was photographed. Dkt. 9-2.

On March 29, the screening officer notified Mr. Oldham of the charge A-121, possession

of a cellular device, and provided him with a copy of the conduct report and the screening report.

Dkt. 9-3. Mr. Oldham pleaded not guilty, declined to waive his right to 24-hours' notice of the

hearing, and requested a witness statement from Dwight Hawkins contending that it was Mr.

Hawkins's phone. *Id.* Mr. Oldham also requested video of this incident, but this request was denied

because no footage was available. *Id.* Mr. Hawkins provided the following witness statement:

> Is this yours? Yes the cell phone was mine. On Friday, 3-4-2022 a Cpt. And a Sgt.
> came in the dorm and went to the bed area Smith 3-13-8-9 and found a blue phone
> in the top bunk of 8 upper. The bunk was empty. The phone that was found was
> mine. I take full responsibility for it being left in that bunk area. Mr. Oldham had
> nothing to do with the cell phone being found around him. I am guilty of the pos of
> the phone.

Dkt. 9-5.

On May 17, the DHO held the hearing in case WCC 22-03-0096. Dkt. 9-4. At his hearing,

Mr. Oldham pleaded not guilty and stated, "Not guilty, they never took anything from my hands

I've never had a phone." *Id.* The DHO found Oldham guilty based on staff reports, evidence from

witnesses, the photograph, and the conduct report. *Id.* Under the reason for decision, the DHO

wrote, "Per all above evidence offender found guilty." *Id.* The DHO sanctioned Oldham with a 45-

day loss of privileges and 80-day loss of earned credit time. *Id.*

Mr. Oldham filed his first-level appeal on May 20, arguing that he was denied video evidence, the screening occurred more than seven business days from the incident, that Mr. Hawkins provided a statement that the phone was his, and there was insufficient evidence to support the charge. Dkt. 9-6. Mr. Oldham's facility level appeal and his appeal to the final reviewing authority were both denied. *Id*.; dkt. 9-7. Mr. Oldham then filed this petition for a writ of habeas corpus.

### C.     Analysis

In support of his habeas petition, Mr. Oldham argues that: (1) staff failed to follow the proper chain of custody procedures; (2) the conduct report did not contain all necessary information; (3) he did not have an impartial decisionmaker; (4) he was denied a requested witness and video; and (5) the evidence was insufficient to support the charge. Dkt. 1 at 4-7.

### 1. Procedural Default

The respondent first argues that three of Mr. Oldham's claims – that staff failed to follow chain of custody procedures, the conduct report did not contain all necessary information, and his decisionmaker was not impartial – are procedurally defaulted because he did not include these claims in his appeal to the facility head. Dkt. 1 at 4-7; dkt. 9-6.

In Indiana, only the issues raised in a timely appeal to the facility head and then to the final reviewing authority may be raised in a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles,* 288 F.3d 978, 981 (7th Cir. 2002). Although the prisoner need not articulate each argument with lawyer-like precision, he must provide sufficient information to put a reasonable prison official on notice as to the nature of his claim, so that the prison officials are afforded an opportunity to correct any problems. *See Moffat*, 288 F.3d at 982. Failure to exhaust a claim constitutes a procedural default barring federal habeas

relief. *Id.* at 981–82; *Eads*, 280 F.3d at 729; *Markham*, 978 F.2d at 995–96. A prisoner may overcome a procedural default only by showing "cause and prejudice" or a "miscarriage of justice." *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Johnson v. Foster*, 786 F.3d 501, 505–06 (7th Cir. 2015). "Cause is defined as an objective factor, external to the defense, which impeded the defendant's efforts to raise the claim in an earlier proceeding." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (internal quotation marks omitted). Prejudice is defined as "an error which so infected the entire trial that the resulting conviction violates due process." *Johnson*, 786 F.3d at 505 (quoting *Weddington*, 721 F.3d at 465). The miscarriage-of-justice exception applies only to a "narrow class of cases" involving "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Mr. Oldham contends that the respondent refused to give him a correctly written conduct report, the chain of custody information, confiscation form, or video footage, and he therefore couldn't raise his "newly discovered claims" until he filed this habeas corpus petition. Dkt. 1 at 8; dkt. 11 at 2. In *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997), "the Supreme Court noted that its cases have 'suggest[ed] that the procedural-bar issue should ordinarily be considered first.' Nevertheless, added the Court, it did 'not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (quoting *Lambrix*, 520 U.S. at 525). In this case it appears to be in the interests of both justice and judicial efficiency that the merits of Mr. Oldham's habeas claims be resolved. Considering Mr. Oldham's claims on the merits rather than first resolving the exhaustion issue will most likely promote judicial economy.

### 2. Mr. Oldham's Claims

#### a. Chain of Custody

First, Mr. Oldham contends that staff members violated Indiana Department of Correction chain-of-custody procedures. But prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). Accordingly, Mr. Oldham is not entitled to relief on this basis. To the extent that Mr. Oldham suggests that the alleged failure to follow chain-of-custody procedures undermines the guilty finding, his challenge to the sufficiency of the evidence is discussed below.

#### b. Notice

Mr. Oldham next argues that the conduct report did not contain necessary information. Due process requires that an inmate be given advanced "written notice of the charges ... in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize

the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003); *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995).

Mr. Oldham asserts that, in the conduct report, only Captain Farley is listed as the reporting employee and suggests that some unknown officer actually wrote the report. He also states that the description of the location of where the incident took place is incorrect. But the conduct report did provide the rule that he allegedly violated and the facts underlying the charge, which satisfies the notice requirement. Further, because Captain Farley signed the report, it is reasonable to infer that he is the one who prepared it. Any error in identifying the location does not mean that the conduct report did not provide him enough information to prepare his defense. Mr. Oldham therefore is not entitled to relief on this claim.

### c. Impartial Decisionmaker

Next, Mr. Oldham claims that his hearing officer was not impartial. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the constitutional standard for impermissible bias is high. *Piggie*, 342 F.3d at 666. Hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Oldham bases his claim that his hearing officer was not impartial on his allegation that the hearing officer "refused to hear anything [he] had to say." Dkt. 11 at 9. He further relies on his

other claims in this case to support his contention that the hearing officer was not impartial. *Id.* But the fact that the hearing officer found Mr. Oldham guilty is not enough to show bias. *See Liteky v. United States*, 510 U.S. at 556 (1994). And Mr. Oldham has not shown that the hearing officer had any relationship with the conduct at issue or its investigation. *See Eads v. Hanks*, 280 F.3d 728 729 (7th Cir. 2002). He therefore has failed to show that he was denied an impartial decisionmaker.

### d. Requested Video and Witness

Mr. Oldham also argues that he was denied requested video and his requested witness. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). "[T]he purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

Mr. Oldham contends video would have shown that no one took a cellphone out of his hand. But the record reflects that no video existed when he made his request. Dkt. 9-3. The failure to produce evidence that doesn't exist does not violate due process. *See Manley v. Butts*, 699 F. App'x. 574, 576 (7th Cir. 2017) (prison administrators are not obligated to produce evidence they do not have).

Next, Mr. Oldham contends that Mr. Hawkins would have testified that the phone at issue was his and he left it on an empty bed. It is true that "[i]nmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety

and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Here, Mr. Hawkins's proposed testimony that the phone at issue was his and had been left on an empty bed is not inconsistent with the Conduct Report, which stated that Mr. Oldham had the phone in his hand. For example, it could be true that Mr. Hawkins left the phone on a bed and Mr. Oldham later picked it up. Mr. Oldham therefore has not shown that, by not having Mr. Hawkins's live testimony, he was denied material, exculpatory evidence.

### e. Sufficiency of the Evidence

Finally, Mr. Oldham suggests that the evidence was insufficient to support the disciplinary charge. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board."). Here, the conduct report provides sufficient evidence to conclude Mr. Oldham possessed a cellphone. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (A Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision."). He therefore is not entitled to relief on his basis.

### D.      Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Oldham to the relief he seeks. Accordingly, Mr. Oldham's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.


Date: 4/3/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana


Distribution:

JAMES OLDHAM
135678
CORRECTIONAL INDUSTRIAL FACILITY (CIF)
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov